12898

*EX PARTE* HERNLEN

STATE *EX REL.* FANT, STATE BANK EXAMINER v. BROWNE, RECEIVER

(153 S. E., 133)

182

*Messrs. Allen & Doyle* for appellant,

*Mr. S. M. Wolfe,* for respondent,

April 17, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of his Honor, Judge Dennis, awarding the petitioner, Mrs. Hernlen, priority over all other general creditors of the defunct People's Bank of Anderson, in the distribution of its assets, under the circumstances which will be detailed.

The petition alleges in substance:

That in June, 1921, Mrs. Hernlen had upon deposit with the bank approximately $8,000; that on June 21, 1921, Lee G. Holleman, president of the bank, committed suicide, a fact which caused her to become apprehensive of the safety of her deposit; that she immediately notified E. P. Vandiver, who had succeeded to the presidency, that she wished either to remove her deposit, or to have him invest it in a safe loan secured by a mortgage of real estate; that Vandiver agreed to so invest it, and she allowed the deposit to remain in the bank upon such assurance; that thereafter, and prior to January 6, 1922, Vandiver notified her that *he had an application* from one McCarley *for a loan* of $10,000.00, which she might obtain under the arrangement referred to; that she, with her brother and a representative of the bank, made an

inspection of the real estate which McCarley proposed to mortgage as security for *said loan;* that she declined to make a loan in excess of $8,000 upon the security offered, but was willing to make it for that amount, which she agreed to do, *"the same to be advanced from the deposit in said bank";* that the agreement then with Vandiver was that he would negotiate the loan for her of $8,000 and take from McCarley an additional note to the bank for $2,000, all to be secured by the mortgage, but the $8,000 note to Mrs. Hernlen to have priority over the $2,000 note to the bank, in the mortgage; that hearing nothing from Vandiver as to the loan in the meantime, on January 6, 1922, she gave a check to her husband for the full amount of the deposit and directed him to withdraw it from the bank unless he found that the loan had been perfected; that he presented the check for payment to the bank, but upon the representation of Vandiver that the papers were being prepared, and would be completed that day, she allowed the deposit to remain in the bank to be drawn upon by Vandiver in perfecting the loan; that on January 17, 1922, the bank closed its doors and was taken over by the state bank examiner; that she then demanded of those in charge of the bank the papers in the McCarley loan, but "was advised that no loan had been made in her name, and that her money still remained a deposit;" that Vandiver had *made a loan* to McCarley for $10,000, in two notes of $8,000 and $2,000, executed on January 6, 1922, secured by the mortgage, referred to, duly recorded, "which papers remained in the hands of the People's Bank of Anderson, *as unpledged assets;* that subsequently the notes were paid in full to the liquidating agents of the bank on July 17, 1923, and the mortgage canceled of record; the petition further alleges:

"That although the Eight Thousand Dollar ($8,000,00)-note was made payable to said bank, it was taken pursuant to the agreement aforesaid to wit: that it was to be the property of the petitioner and it was held by the said bank as

trustee for the petitioner, with the intention or obligation to transfer it to her in accordance with the agreement, and was at all times so held."

And further:

"Petitioner alleges that in law and equity the Eight Thousand Dollar ($8,000.00)-note given by the said L. P. McCarley, as aforesaid, and secured by the said mortgage, was her property and under the facts stated she was entitled, upon the payment of the said Eight Thousand Dollar ($8,000,-00)-note, by L. P. McCarley to receive the proceeds thereof in preference to any claim of the said The Peoples Bank of Anderson, or any creditor thereof, and she alleges that the receiver of the said The Peoples Bank of Anderson has failed and refused to account to the petitioner for the proceeds of said payment, and that, instead, the proceeds of said payment went into the general corpus of the said bank's estate succeeded to by the receiver herein, the assets of the said corporation being increased to the extent of the amount of the proceeds of such payment. Petitioner alleges that there are assets of the said The Peoples Bank of Anderson in the hands of the receiver, out of which she can be reimbursed for the amount of the proceeds of the said note which was her property as aforesaid, and which assets she alleges are unpledged, and belong to her to said extent, and she alleges that a lien should be declared as against the proceeds of payment of said note by said McCarley, and that in equity she has a lien thereon, and that it is the duty of the receiver in this action to account to her out of the assets remaining in his hands for such sum of money."

The petition, in the main, is abundantly sustained by the evidence; in fact, as counsel for the appellant states in his printed argument: "There is little controversy as to the facts."

Upon learning of the suicide of the president of the bank, in June, 1921, Mrs. Hernlen, naturally, became apprehensive of the safety of her deposit, which at that time was

over $7,000, and communicated to Vandiver who had suc-
ceeded Holleman as president, her purpose either to withdraw
her deposit or to have him invest it in a note secured by a
mortgage upon real estate.

Vandiver, the helmsman of the vessel in a storm, if not
in an actually sinking condition, was naturally anxious to
retain the deposit of such a considerable amount, to enable
him, if possible, to weather the storm; he needed it also to
avoid the effect upon other depositors, of a withdrawal by
Mrs. Hernlen—the possibility of a banker's greatest dread
—a "run" on the bank. He checked her impulse to withdraw
the deposit, by agreeing to her alternative suggestion of
*investing that deposit in a loan for her,* upon a note secured
by a mortgage of real estate.

In the fall of 1921, Vandiver notified Mrs. Hernlen that
he had an application from one McCarley, *for a loan* of
$10,000.00, upon a real estate mortgage, which he recom-
mended, and stated that, if she approved it, *he would make
the loan for her.*

In response thereto, Mrs. Hernlen, who lived at McCor-
mick, went to Anderson, and, in company with her brother
and a representative of the bank, inspected the tract of land
offered as security for *the loan.* As the result of such in-
spection, she told Vandiver that she would lend only $8,000,-
00 on the security offered. Vandiver explained that McCar-
ley needed $10,000.00, and that the bank would lend him
$2,000.00 and would lend him $8,000.00 for her, take one
mortgage securing both notes, and assign the $8,000.00 note
and the mortgage to her, giving her preference as to lien.

In this connection Vandiver testified: "I intended to lend
eight thousand dollars for Mrs. Hernlen, and I promised
her the note and mortgage for this amount. We (the bank)
wanted to take a ten-thousand-dollar note because we thought
then that the property would secure that much. And the
agreement was that the bank would take an 'eight' and a
'two' and that they (the bank) would assign the 'eight' to

Mrs. Hernlen and make it a preference over the two thousand."

Mrs. Hernlen agreed to this arrangement which was to be consummated by recourse by Vandiver to her deposit. She did not have at that time sufficient funds on deposit with which to make the proposed loan of $8,000.00, and on January 3, 1921, she made a deposit of $1,891.26; her deposit thus supplemented then amounted to $8,989.54.

On January 6th, not having heard from Vandiver in reference to the proposed loan, Mrs. Hernlen gave a check to her husband for the full amount of her deposit and directed him to withdraw it from the bank in the event that the McCarley loan had not been consummated; he presented the check for payment to the bank, but upon the representation of Vandiver that the papers were being prepared and would be completed that day, he destroyed the check and left the deposit intact. Vandiver testified that the check would have been honored at that time but for his assurance.

The evidence conclusively shows that Mrs. Hernlen was induced to allow her deposit to remain in the bank upon the representations of Vandiver *that he had received an application for a loan* of $10,000.00 from McCarley to be secured by a mortgage upon real estate; that the loan would be evidenced by two notes of $8,000.00 and $2,000.00; that both would be secured by the same mortgage; that the $8,000.00 note would be assigned to Mrs. Hernlen and should have priority over the $2,000.00 note to the bank; that the $8,000.00 would be withdrawn from Mrs. Hernlen's deposit to complete *the loan* to McCarley.

The evidence further conclusively shows, we regret to have to say, that the representations were not true and were intend by Vandiver to induce Mrs. Hernlen to allow the deposit to remain in the bank, no part of which he intended to pay to McCarley.

We quote from the appellant's brief: "At some time early in January, 1922, prior to January 17th, McCarley and

the bank had the agreement that his notes *should be renewed, and that McCarley would secure the payment thereof to the extent of $10,000.00, with a real estate mortgage on his land."* (Italics added.)

Instead of applying for a loan of $10,000.00, McCarley at that time was indebted to the bank on sundry notes, aggregating $11,561.80; there were seven of them, and all of them had been assigned by the bank to certain correspondent banks as collateral security to debts due them by the bank; all of them, with the exception of a small $100 note, were due on December 31, 1921. This list shows their several amounts and the banks to which they had been assigned as collateral:

| | |
|---|---:|
| National City Bank | $ 3,000.00 |
| ditto | 2,221.00 |
| Central National Bank | 650.00 |
| ditto | 200.60 |
| National State & City Bank | 100.00 |
| Bank of Anderson | 1,040.20 |
| ditto | 3,000.00 |
| ?——— | 1,350.00 |
| | $11,561.80 |

It is manifest, then, that Vandiver never intended to make a loan to McCarley, but intended to consolidate the outstanding notes of McCarley into the new mortgage of $10,000.00, securing the notes of $8,000.00 and $2,000.00. The separation of the $10,000.00 mortgage which McCarley proposed to give, into two notes, one of which was to be assigned to Mrs. Hernlen, was calculated to assure her of the sincerity of Vandiver's promise.

Accordingly on or about January 6, 1922, Vandiver directed his attorneys, Messrs. Bonham & Allen, to prepare two notes of $8,000.00 and $2,000.00, respectively, payable, *not to Mrs. Hernlen, but to the bank,* and a mortgage securing the same. The instructions were carried out, and

the papers were prepared. There is some question as to whether they were executed upon the day they bear date, January 6, 1922; it is certainly established that they were not delivered to the bank until after January 17th when the bank closed. We do not regard this issue as at all determinative of the rights of Mrs. Hernlen, as will later appear.

It is very clear that the papers were prepared as renewals of the outstanding notes of McCarley to the bank, held by other banks as collateral, and not as a contemporaneous loan by the bank of Mrs. Hernlen's funds to McCarley.

The following appears in the testimony of Vandiver:

"Q. Mr. Vandiver, I believe you testified that all of the Pearce McCarley notes were held by corresponding banks as collateral at the time the Peoples Bank closed? A. I think so, yes, sir.

"Q. And that this ten thousand dollar note was given as a renewal of those notes to the extent of ten thousand dollars? A. Yes, sir, that's correct.

"Q. And as a matter of fact you could not have used this ten thousand dollar note for any other purpose without the consent of the people who held the original note? A. No, sir."

Vandiver was thus holding out to Mrs. Hernlen a promise that he knew that he could not fulfil in order to induce her not to withdraw her deposit; it is clear that she acted upon it.

It makes no difference whether the $10,000.00 mortgage was *executed* on January 6th or later; or whether it was *delivered* to the bank before or after the closing; the point is that, when Vandiver induced Mrs. Hernlen to allow her deposit *to remain in the bank* upon his promise to invest it in a real estate mortgage, it amounted to the same thing as if he had induced her *to make a deposit* upon such an engagement; under either condition the deposit would constitute the corpus of a trust fund and the bank a trustee of it for Mrs. Hernlen. It is also clear that the trust was created in bad faith upon the representation, which was not

true, that McCarley had made application for a loan, and upon the false promise which Vandiver knew at the time he could not and did not intend to fulfil—a trust *ex maleficio*.

It is an established principle, under the case of *Ex parte Bank of Aynor,* 144 S. C., 147, 142 S. C., 239, that the beneficiary of such a trust as this is entitled to be preferred in the distribution of the assets of a failed bank, over the general creditors. The discussion at length of the subject in that case is referred to, without an apparently needless repetition here.

It appears that the McCarley notes and mortgage were not delivered to the bank until after it closed. After that event the bank transmitted to the National City Bank of New York the $8,000 note of McCarley as collateral to certain obligations; the $2,000 note was likewise assigned to the Bank of Anderson; this note was afterwards assigned to the Carolina National Bank of Anderson; later both notes came into the possession of the Carolina National Bank and were paid by McCarley to the liquidating agent and the proceeds paid to the Carolina National Bank.

In our view of the case Mrs. Hernlen is entitled to enforce her trust to the extent of $8,000.00, with interest from January 3, 1922, at 7 per cent. per annum out of the assets in the hands of the receiver in preference to the general creditors of the bank and to rank as a depositor to the extent of $989.94.

The payments which have been or may be made to her from the proceeds of the stockholder's liability will be applied to what she is entitled to as a depositor upon the basis of $989.94; the remainder, to the trust account; and the dividends which have been or may be made out of the liquidation will be applied to the balances upon the trust account and the deposit account combined.

The conclusions of the circuit Judge upon points not discussed in this opinion are satisfactory to the Court; as to them the decree is affirmed; in other respects it is modified as herein indicated.

Mr. Chief Justice Watts and Messrs. Justices Blease, Stabler and Carter concur.

On Petition for Rehearing.

*Per Curiam.*

Upon consideration of the petition for rehearing filed in the above-stated case, it appears that the Court was in error in allowing Mrs. Hernlen interest from January 3, 1922, at 7 per cent. per annum; the bank being an insolvent institution in the hands of a receiver, under administration of its assets, no interest should have been allowed upon the trust fund of $8,000.00. *Hutchinson v. Bates,* 1 Bailey, 111; Morton v. Caldwell, 3 Strob. Eq., 161; *Williams v. Benedict,* 8 How., 107, 12 L. Ed., 1007; *People v. American Loan & T. Co.,* 172 N. Y., 371, 65 N. E., 200.

There appears also in the opinion an error in the amount of the deposit balance account of Mrs. Hernlen; it should be $8,489.54, instead of $8,989.54.

It is therefore ordered that the opinion heretofore filed be modified in accordance herewith; it is further ordered that the remittitur be stayed for a period of ten days after the filing of this order that counsel for Mrs. Hernlen may have an opportunity to file a petition for a rehearing for the purpose of correcting what may be apprehended is an error herein.